Coven, J.
This appeal arises from a claim for personal injury protection (“PIP”) benefits filed by the medical provider for services provided to the defendant’s insured. Summary judgment for the defendant was entered, and the plaintiff has appealed the allowance of the defendant’s Mass. R. Civ. P, Rule 56, motion.
The defendant-appellee, Arnica Mutual Insurance Company (“Arnica”), provided PIP coverage to one Cormier, who was injured in a motor vehicle accident on April 17, 2005. Arnica requested Cormier to submit to a medical examination to be performed by Dr. Ronald E. Rosenthal (“Rosenthal”). Rosenthal reported that as of June 22,2005, Cormier had not reached a medical end result due to a low back strain and that “another four weeks of physical therapy would be appropriate,” at which time he “believed she will reach the medical endpoint.” Arnica’s PIP adjuster, Karen Bergman (“Bergman”), who was handling Cormier’s claim, forwarded a copy of Rosenthal’s findings to Cormier’s attorney, also informing the attorney that a PIP application had not been received from Cormier.
On June 30, 2005, Cormier’s attorney submitted a completed PIP application to Arnica that contained a Health Benefit Affidavit showing that Cormier had a health insurance policy through the Commonwealth Indemnity Plan (“Unicare”). Bergman responded to Cormier’s attorney by a letter indicating that $2,000.00 in PIP benefits had been paid, and that all subsequent bills should be submitted to Cormier’s health insurer.
Plaintiff John Duffy, D.C. (“Duffy”) provided a total of twenty-nine chiropractic treatments to Cormier during the period August 24,2005 to October 28,2005. Duffy submitted bills to Arnica for payment for those treatments. In multiple letters sent to Duffy, Bergman informed him that no PIP benefits would be paid for expenses incurred after July 20, 2005 because, as of that date, the PIP benefits had been exhausted.
On July 17, 2006, Duffy submitted bills to Cormier’s health insurer, Unicare, and attached the letter from Bergman with the instructions to submit subsequent bills to Cormier’s health insurer. Any denial of payment of those bills by Unicare could then have been resubmitted to Arnica for Arnica to cover the balance of the bills. Arnica never received any documentation of an insurance denial by Unicare concerning Duffy’s bills.
*134 During the course of discovery, Duffy did not identify the amount of his claims or the substance of the health insurer’s response to the July 17,2006 submission of his bills, and did not disclose whether he received any other sum from Cormier or the third party insurer. Arnica’s attorney then served a subpoena on Cormier’s health insurer, who responded through its representative, Deborah Fraser (“Fraser”). In her affidavit, Fraser states that the treatments provided to Cormier by Duffy were covered under the insured’s health plan, but that Unicare paid only the bills through October 11,2005 pursuant to the plan policy that provided for maximum benefits of only twenty visits per year.
Duffy submitted total bills of $3,694.00 for payment to Unicare. Unicare then applied a provider discount of $1,296.75 according to the terms of the plan and paid $892.91 to Duffy on August 14, 2006. In addition, a payment of $1,109.99 was made to Duffy on August 10, 2007 by Cormier after a settlement of the underlying negligence case. Using the dollar figures supplied by Unicare and his own bills, Duffy-claimed that $394.44 remained due at the time of this action.
On July 11, 2011, fourteen months after answering the complaint, Arnica tendered a check in the amount of $394.44 for the balance claimed due. Arnica deemed it a business decision to pay Duffy’s claim for the full amount for medical expenses incurred by Cormier, its insured. In the letter tendering the check, Arnica’s counsel, citing Fascione v. CNA Ins. Cos., 435 Mass. 88 (2001), requested that Duffy’s complaint be dismissed due to the tender of payment. Duffy’s counsel returned the check to Arnica’s attorney, stating that he rejected Arnica’s “settlement offer.”
Duffy commenced this action on May 14, 2010 seeking payment of his unpaid charges under G.L.C. 90, §34M (count 1); recovery for damages and attorney’s fees under G.L.c. 93A, §11 for Arnica’s alleged unfair and deceptive practices in the handling of insurance claims in violation G.L.c. 176D, §3 (counts 2 and 3); and recovery for unlawful contracts or conspiracies in restraint of trade or commerce under G.L.c. 90, §12 (count 4). On August 16,2011, Arnica filed a motion for summary judgment that was heard on September 23, 2011. On September 27, 2011, the court allowed Arnica’s summary judgment motion as to count 1, the G.L.c. 90, §34M claim for PIP benefits. Duffy then filed a motion for reconsideration and clarification, to which Arnica filed an opposition on October 26,2011. Arnica next moved for summary judgment as to counts 2, 3, and 4, which was allowed after hearing by the trial court. Judgment for Arnica was entered on February 17,2012, and this appeal by Duffy followed.
The allowance of summary judgment is appropriate when the “pleadings, depositions, answers to interrogatories, and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass. R. Civ. P., Rule 56(c). Once the moving party establishes that no genuine issue of fact exists through the submission of evidence, the burden shifts to the party opposing the motion. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). To satisfy this burden and defeat the motion, the opposing party must respond by setting forth specific facts contradicting those produced by the moving party. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
*135 In proving the existence of a genuine dispute, the nonmoving party cannot simply make conclusory statements or argumentative assertions, but must instead set forth material facts that establish that a genuine issue exists that requires a trial. See id. Failure to produce specific, material facts will result in summary judgment for the moving party, if appropriate. Mass. R. Civ. R, Rule 56(e).
The obligation to provide PIP benefits for the treatment given to Cormier was contingent upon the “coordination of benefits provision” found in Arnica’s policy with its insured, which states:
Some people have a policy of health, sickness, or disability insurance or a contract or agreement with a group, organization, partnership or corporation to provide, pay for, or reimburse the cost of medical expenses (‘health plan’). If so, we will pay up to $2,000 of medical expenses for any injured person. We will also pay medical expenses in excess of $2,000 for such injured person which will not be paid by a health plan. Medical expenses must be submitted to the health plan to determine what the health plan will pay before we pay benefits in excess of $2,000 under this Part. We will not pay for medical expenses in excess of $2,000 that the health plan would have paid had the injured person sought treatment in accordancé with the requirements of the health plan.
Massachusetts Automobile Insurance Policy, seventh edition (1-00).
Under this coordination of benefits provision, the insured, Cormier, had a duty to submit bills beyond the initial $2,000.00 PIP limit to her health insurer before submitting them to Arnica, her PIP carrier. See Mejia v. American Cas. Co., 55 Mass. App. Ct. 461, 466 (2002). Bergman’s letter to Cormier’s attorney indicated that $2,000.00 in PIP benefits had already been paid and all subsequent bills were to be submitted to Cormier’s health insurer for evaluation. Under Arnica’s policy, the health insurer was to evaluate the subsequent bills and, if the health insurer denied the coverage, the bills could then have been resubmitted to Arnica. The affidavit of Bergman, the PIP adjuster responsible for handling Cormier’s claim, indicated that Arnica received no documentation from Cormier’s health insurer regarding any denial of coverage. As Cormier failed to comply with the coordination of benefits provision, Arnica, as a matter of law, was relieved of any obligation to cover expenses that were covered under the insured’s health insurance plan.
Further, Arnica, through its own discovery, provided the affidavit of Fraser, the Unicare representative, in which Fraser stated that the services provided to the insured by Duffy were covered under the health plan and that Unicare paid only submitted bills for the first twenty visits, as provided in Cormier’s health plan. Included with Fraser’s affidavit were the submitted bills from Duffy and the payments from Unicare and Cormier, leaving the remaining balance at $394.44. Although it was not obligated to pay this balance because the coordination of benefits provision was not satisfied, Arnica made a business decision to pay the balance after the commencement of this suit upon consideration of the amount in dispute and the potential court costs and attorney’s fees. See Kantorosinski Chiropractic, Inc. v. Plymouth Rock Assur. Corp., 2011 Mass. App. Div. 234, 235 (2010). Given the tender of payment of the full PIP benefits, Duffy’s §34M claim was extinguished. Metro West Med. Assocs. *136 v. Amica Mut. Ins. Co., 2010 Mass. App. Div. 136, 138-139; Amari v. Amica Ins. Co., 2003 Mass. App. Div. 77, 78.[1]
Because Duffy has failed to establish that it complied with the coordination of benefits provision of the policy and summary judgment was properly entered on behalf of Arnica, we need not address Duffy’s additional claims.
Appeal dismissed.
So ordered.

 Duffy argues that the “provider discount” applied by Unicare is still owed, causing the discrepancy in the remaining balance. Because of this discrepancy, Duffy argues that there exists a genuine issue of fact that must go to trial. This argument, however, is based on the fact that Duffy believes he is owed the difference between the submitted bills and the amount received from the health insurer and may subsequently bill the balance to Arnica. This belief is misplaced. In Shah v. Liberty Mut. Ins. Co., 56 Mass. App. Ct. 903 (2002), the Appeals Court held that a participating provider may not “balance bill” the remainder of its bill after payment from the health insurer to the PIP provider. Id. The Court reasoned that “balance billing” would burden the PIP carrier with a medical payment that the medical provider agreed to when accepting the insured patient. Id. at 904. Here, Duffy is seeking to do just that. Duffy disliked the payment tendered by the insured’s health care insurer and proceeded to bill the balance to the PIP provider, something the Court in Shah held impermissible. For this reason, Duffy’s argument fails.